## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSHUA SIEGEL, on behalf of himself and all others similarly situated, ) | Case No. _____ |
| ) | |
| ) | **CLASS ACTION COMPLAINT** |
| Plaintiff, ) | |
| ) | |
| ) | |
| vs. ) | |
| ) | |
| ) | |
| SAMSUNG ELECTRONICS AMERICA, INC., a New Jersey Corporation and SAMSUNG ELECTRONICS CO., LTD., a Foreign Limited Liability Company, ) | |
| And ) | |
| Jane Does (1-Unlimited) ) | **JURY TRIAL DEMANDED** |
| And ) | |
| ABC Corporation (1-Unlimited), ) | |
| Defendants. ) | |
| ) | |

2017 MAR 10  P 2 2

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff Joshua Siegel, individually and on behalf of a proposed Class as defined herein, brings this Class Action Complaint against Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. (a subsidiary of Samsung Electronics Co., Ltd.) (collectively, "Samsung" or "Defendants"). In support of Plaintiff's Class Action Complaint, Plaintiff alleges the following, based on his personal experiences and the investigation of counsel:

## I. NATURE OF THE ACTION

1. This is a putative class action on behalf of a nationwide class seeking injunctive relief and compensation for damages caused by Defendants' deceptive, misleading, and unconscionable practice of routinely and secretly intercepting and recording the private communications of consumers in their homes using hidden recording devices inside Smart TVs -- and then using and transmitting those private conversations and information to third parties -- in violation of the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1 et seq., ("CFA") and various other statutes and laws.[1]

2. The action also seeks damages caused by Defendants' reckless and/or negligent failure to use reasonable care and/or reasonable encryption methods in order to protect against third parties from gaining access to Samsung's customers' private conversations in their home.

3. Dozens of affiliates and subsidiaries operate under the Samsung brand, including Samsung Electronics, one of the largest electronics manufacturers in the world. One of Samsung Electronics' most successful enterprises has been its

---

[1] Defendants' practice of intercepting and recording consumers' private communications in the home and then transmitting that information to third parties is also unlawful, deceptive and misleading and violates, amongst other laws, the Subscriber Privacy Provision in the Cable Communications Policy Act, the Electronic Communications Privacy Act, and the Children's Online Privacy Protection Act. See infra.

manufacture of "Smart TVs"[2] – home entertainment systems that respond to human voices and gestures.[3]

4.    However, unbeknownst to unsuspecting consumers, through the recording devices hidden inside the Smart TVs that Defendants sell to consumers, Defendants routinely and secretly intercept and record the private communications of consumers in their homes – *including children's voices in violation of the Children's Online Privacy Act* -- and then use and sell that information for commercial gain.[4]

5.    These private communications and data about Samsung consumers are then transmitted by Defendants to a third party, upon information and belief, without proper encryption.[5]

6.    Defendants recklessly and/or negligently made inadequate disclosures to Plaintiff and the Class members and have also failed to use reasonable care to protect the private recordings and information of Samsung customers. Upon information and belief, Defendants recklessness and/or negligence as to Plaintiff and the Class' privacy has allowed outside third parties to hack and gain access to Plaintiff and the Class' private recordings and information -- causing further harm to Plaintiff and the Class.[6]

7.    In fact, the degree of Defendants' lack of adequate protection regarding Samsung's hidden "spying system" in Smart TVs was revealed publicly on March 7, 2017, when WikiLeaks reported that Samsung Smart TVs were in fact

---

[2]  Samsung Smart TV - TV Has Never Been This Smart, SAMSUNG, http://www.samsung.com/us/experience/smart-tv/

[3]  Samsung first announced its voice-activated television at the Consumer Electronic Expo in 2012. Samsung's "Smart Touch" remote control has a built-in microphone for voice recognition.  Other models include a camera and additional microphones to recognize voice and hand gesture.

[4]  In re: Samsung Electronics Co., Ltd. 20 Federal Trade Commission, February 24, 2015 (the "FTC Samsung Brief") (attached hereto as Exhibit 1).

[5]  Id.  "Samsung users could not reasonably have anticipated that by using a voice-controlled SmartTV, their private conversations would be transmitted, sometimes unencrypted, to a third party company."  Id.

[6]  https://www.nytimes.com/2017/03/07/world/europe/wikileaks-cia-hacking.html? _r=0

being used by outside parties to spy on Samsung customers' private-conversations, even when the device was supposedly turned "off."[7]

8.     But for Defendants' false, deceptive, and misleading course of conduct, described herein, consumers, including Plaintiff and the Class, would not have purchased Samsung Smart Televisions or, at a minimum, would have purchased fewer products and/or paid less for the products they did purchase.

9.     Defendants' actions are an unconscionable commercial practice in violation of the CFA. Each instance of Defendants' recording, storing, and/or transmitting private conversations and data of its customers constitutes a separate violation under the CFA.   N.J. Stat. Ann. § 56:8-2.

10.    Moreover, the Federal Trade Commission ("FTC") has already deemed Defendants' conduct alleged herein to be misleading and deceptive,[8] and has argued that "*Samsung users could not reasonably have anticipated that by using a voice-controlled SmartTV, their private conversations would be transmitted, sometimes unencrypted, to a third party company*."[9]

## II.    JURISDICTION AND VENUE

11.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(d)(2), because the proposed class has more than 100 members, the class contains at least one member of diverse citizenship from Defendants, and the amount in controversy exceeds $5 Million.

12.    The Court has personal jurisdiction over Defendants because Defendants are headquartered in the state of New Jersey and Defendants regularly transact business within the State of New Jersey.   Moreover, the deceptive and

---

[7] One program, used by the CIA and code-named Weeping Angel, uses Samsung "smart" televisions as covert listening devices. According to the WikiLeaks news release, even when it appears to be turned off, the Samsung television actually "operates as a bug, recording conversations in the room and sending them over the internet to a covert C.I.A. server." https://www.nytimes.com/2017/03/07/world/europe/wikileaks-cia-hacking.html?_r=0 (

[8] See FTC Samsung Brief at 19 (attached hereto).

[9] Id.

misleading sales, advertising and marketing of Samsung products in the United States originated in and emanated from New Jersey.

13.     Venue properly lies in this District pursuant to 28 U.S.C. §1391(a)(1), because Defendant Samsung is headquartered and conducts its business from 105 Challenger Road, Ridgefield Park, NK 07660, which is in this District, and because all Defendants conduct substantial business within this District.

A.     Application of New Jersey Law To
       Consumers Nationwide is Appropriate

14.     Defendants are headquartered in New Jersey and Defendants' United States sales strategy, advertising, marketing and product promotion was conceived in, and emanates from, Defendant Samsung's' headquarters in Ridgefield Park, New Jersey.

15.     Application of New Jersey law to consumers nationwide is appropriate because, upon information and belief, Defendants maintain their US based corporate, marketing and advertising department(s) in New Jersey where the alleged misconduct, described herein, emanated from. In addition, upon information and belief, Defendants' products are distributed throughout the United States from their facilities located in New Jersey.   New Jersey also has a substantial, compelling reason to protect consumers from deceptive and unlawful misconduct of companies headquartered there.

## III.   THE PARTIES

16.     Plaintiff Joshua Siegel is a resident and citizen of Long Beach, New York. During the Class Period, Mr. Siegel purchased several Samsung Smart TVs which are the subject matter of this dispute.  Since his purchase of Samsung Smart TVs, Mr. Segal kept those Smart TVs in personal, private areas of his home,

including his bedroom and living areas. At all times during the Class Period, Plaintiff Segal was unaware that, amongst other things: (i) the Samsung Smart TV's he had purchased secretly records and transmits his and his family's conversations, or (ii) that Defendants stored and transmitted his personal data and recordings on to third parties, (iii) that Defendants had made inadequate disclosures to Plaintiff and the Class members; or (iv) that Plaintiff's and the Class members' private conversations in their home could be hacked by third parties due to Samsung's reckless and/or negligent efforts to protect that private, sensitive data and recordings.

17.     Defendant Samsung Electronics Co., Ltd., is a Republic of Korea limited company with its principal place of business in 250, 2-gaaepyong-ro, Jung-gu, Seoul 100-742, Korea. Defendant Samsung Electronics America, Inc. is a subsidiary of Samsung Electronics Co., Ltd., located at 105 Challenger Road Ridgefield Park, N.J. 07660.

## N.J. STAT ANN. § 56:8-2

18.     The CFA, N.J. Stat. Ann. § 56:8-2, prohibits:

The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise . . . .

19.     The CFA defines "merchandise" as "any objects, wares, goods commodities, services or anything offered, directly or indirectly to the public for sale." N.J. Stat. Ann. § 56:8-1(c).

5

20.     At all relevant times, Defendants have engaged in the advertisement, offering for sale and sale of merchandise within the meaning of N.J. Stat. Ann. § 56:8-1(c); specifically Samsung televisions and related products and services.

## IV.    FACTUAL BACKGROUND

### A.    Congress Anticipated the Privacy Threats of "Interactive Television" In the Early 1980s

21.     Concerns about the use of televisions to collect consumer information were anticipated in the 1980s.[10]

22.     Privacy scholars and policy makers recognized the risk that interactive television would threaten the privacy of users if safeguards were not established.[11]

23.     These risks included the "danger similar to wiretapping," of "misuse and interception of 'private' information" during transmission to the central servers, as well as the insecurity of data once it arrived at the central servers.[12]

24.     The Cable Communications Policy Act (the "Cable Act") was enacted in 1984 to combat these risks.[13]

25.     The Cable Act ensures, amongst other things, that cable operators collect only the user data needed to operate the service, keep the data secure while it is in use, and delete the data once it has served its purpose. It also gives cable consumers the right of access to their data.[14]

---

[10] 11 David A. Bode, Interactive Cable Television: Privacy Legislation, 19 Gonz. L. Rev. 725 (1984).

[11] See William J. Broad, U.S. Counts on Computer Edge in Race for Advanced TV, N.Y. Times (Nov. 28, 1989), http://www.nytimes.com/1989/11/28/science/us-counts-o-computer-edge-in-the-race-for-advancedtv.html ("Finally, scientists say, the advent of digital television will aid the merging of computers and television, with the prospect of a rush of combined uses."); David Flaherty, Protecting Privacy in Two Way Electronic Services, Communications Library (1985).

[12] Bode, supra 13 at 711. See also Cable Television Privacy Act: Protecting Privacy Interests from Emerging Cable TV Technology, 35 Fed. Com. L.J. 71, 79 (1983).

[13] Cable Communications Policy Act of 1984, 47 U.S.C. §§ 601-639. 16 Id at §631. 17 S.Rep. No. 67, 98th Cong., 1st Sess. 27 (1983).

[14] Id.

26.    According to the Senate Committee on Commerce, Science, and Transportation, "the development of new and diversified services over interactive two-way cable systems should not impact adversely upon the privacy of the individual."[15]

27.    The FTC Chair has addressed the specific problem of consumer devices  that spy on consumers. Chair Ramirez stated, "Reasonable limits on data collection and data retention is the first line of defense for consumer privacy."[16]

B.    Samsung Sells Smart TVs that Record
       Voice Communications in the United States

28.    Beginning in 2012, some companies developed techniques to monitor and recognize voice communications.

29.    Samsung first announced such a television at the Consumer Electronic Expo in  2012.[17]

30.    Samsung's "Smart Touch" remote control has a built-in microphone for voice recognition; other Samsung Smart TV models include a camera and additional microphones to recognize voice and hand gesture.[18]

31.    As of 2015, SmartTV sales reached almost 200 million units.  Sales are expected to grow to 330 million by 2019.  Samsung had nearly a thirty percent share of the "Smart TV" market.

---

[15] S.Rep. No. 67, 98th Cong., 1st Sess. 27 (1983).

[16] http://www.usnews.com/news/articles/2015/01/06/the-internet-of-things-ftcchairwoman-calls-for-tech-privacy-at-ces

[17] See Christina Bonnington, Samsung Smart TV 2.0 Can 'Listen, See and Do', Wired (Jan. 9, 2012), http://www.wired.com/2012/01/samsung-smart-tvs-ultrabooks/

[18] See Casey Johnston, Hands-on: Gesture, Voice, and the Many Inputs of Samsung's Smart TV, ArsTechnica (Mar. 6, 2012), http://arstechnica.com/gadgets/2012/03/hands-on-gesture-voice-and-themany-inputs-of-samsungs-smart-tv/.

C.    Samsung's "Always-On" Voice Recorders Routinely
      Intercept, Record, and Transmit Private Conversations
      And Data From Unsuspecting Samsung Customers

32.    When the voice recognition feature is enabled (which is the "selling feature" of Samsung's voice recognition – Smart TV – technology), unbeknownst to consumers, everything a user says in front of the Samsung SmartTV is recorded by Defendants and transmitted over the internet to a third party regardless of whether it is related to the provision of the service.[19]

33.    Under the heading "Voice Recognition" on the company's Privacy Policy page, the company states: "To provide you the Voice Recognition feature, some voice commands may be transmitted (along with information about your device, including device identifiers) to a third-party service that converts speech to text or to the extent necessary to provide the Voice Recognition features to you.[20]

34.    Samsung has identified the third party as Nuance, a voice-to-text recognition company.[21]

35.    As described herein, Consumers have no reason to expect that Defendants engaged in second-by-second tracking and recording by surreptitiously recording  content and sending it back to their own servers and then transmitting that information to third parties. Further, Defendants' representations were not sufficiently clear or prominent to alert consumers to their practices related to Defendants' recording of consumers' private recordings in their home.

---

[19] See FTC Samsung Brief (attached hereto).
[20] Id.
[21] Samsung Tomorrow, *Samsung Smart TVs Do Not Monitor Living Room Conversations (Feb. 10, 2015),* *http://global.samsungtomorrow.com/samsung-smart-tvs-do-not-monitor-living-room-conversations/.*

D.  Samsung Recklessly and/or Negligently Fails To Protect
    Consumers Private Information and Conversations

36.  While Samsung has marketed the convenience of its voice-recognition capable SmartTV, it has negligently and/or recklessly failed to consider or properly address the privacy consequences of its SmartTV's configuration; specifically, its susceptibility to hacking of private consumer information.[22]

37.  In addition, Samsung has falsely represented that it encrypts the voice communications it transmits to Nuance.[23]

38.  Samsung claims it, "takes consumer privacy very seriously and our products are designed with privacy in mind. We employ industry-standard security safeguards and practices, including data encryption, to secure consumers' personal information and prevent unauthorized collection or use." [24]

39.  However, a computer researcher determined that Samsung does not encrypt all the conversations it records and transmits to Nuance.[25]

40.  Samsung has admitted that the company does not encrypt all the voice recordings it transmits.[26]

41.  This practice by Samsung of negligently and/or recklessly failing to encrypt and/or protect customers' private-conversations caused customers' private information and recordings to become ripe for theft by outside hackers.

42.  In fact, the degree of Defendants' lack of adequate protection regarding Samsung's hidden "spying system" in Smart TVs was revealed publicly on March 7, 2017, when WikiLeaks reported that Samsung Smart TVs were in fact

---

[22] See infra.

[23] Samsung Tomorrow, Samsung Smart TVs Do Not Monitor Living Room Conversations (Feb. 10, 2015) at 26, http://global.samsungtomorrow.com/samsung-smart-tvs-do-not-monitor-living-room-conversations/.

[24] Id.

[25] David Lodge, Is Your Samsung TV Listening to You?, Pen Test Partners Blog (Feb. 16, 2015), https://www.pentestpartners.com/blog/is-your-samsung-tv-listening-to-you/.

[26] Leo Kelion, Samsung's smart TVs fail to encrypt voice commands, BBC News (Feb. 18, 2015), http://www.bbc.com/news/technology-31523497

9

being used by outside parties to spy on Samsung customers' private-conversations. One program, used by the CIA and code-named Weeping Angel, uses Samsung "smart" televisions as covert listening devices. According to the WikiLeaks news release, even when it appears to be turned off, the Samsung television actually "operates as a bug, recording conversations in the room and sending them over the internet to a covert C.I.A. server."[27]

E.     Samsung's Practices Violate the Subscriber Privacy
       Provision in the Cable Act

43.     The Subscriber Privacy Provision in the Cable Communications Policy Act ("CCPA") prohibits the collection of "personally identifiable information concerning any subscriber without the prior written or electronic consent of the subscriber concerned."[28]

44.     The CCPA also provides, "a cable operator shall not disclose personally identifiable information concerning any subscriber without the prior written or electronic consent of the subscriber concerned and shall take such actions as are necessary to prevent unauthorized access to such information by a person other than the subscriber or cable operator."[29]

45.     Samsung does not obtain written or electronic consent to recording the private conversations of people in their homes and transmitting those voice recordings to Nuance.[30]

46.     Samsung does not "take such actions as are necessary to prevent unauthorized access" to subscriber information.[31]

---

[27] https://www.nytimes.com/2017/03/07/world/europe/wikileaks-cia-hacking.html?_r=0

[28] 47 U.S.C. § 631(b).

[29] Id.

[30] In re: Samsung Electronics Co., Ltd. 20 Federal Trade Commission, February 24, 2015 at 13 (the "FTC Samsung Brief") (attached hereto as Exhibit 1).

[31] Id.

10

47.     In fact, Samsung deliberately overcollects information provided by cable subscribers, in contravention to Congress' explicit purpose for passing the subscriber privacy section of the CCPA.[32]

48.     Samsung is violating the CCPA.[33]

F.      Samsung's Business Practices Violate the Electronic
        Communications Privacy Act

49.     The Electronic Communications Privacy Act ("ECPA") prohibits the "interception and disclosure of wire, oral, or electronic communications."[34]

50.     The statute provides that any person who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication" or "intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection," violates the ECPA.

51.     The statute's definition of "person" includes "corporations."[35]

54      "Oral communications" include only those face-to-face conversations for which the speakers have a justifiable expectation of privacy.[36]

52.     "Wire communications" means "any aural transfer made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection between the point of origin and the point of reception (including the use of such connection in a switching station)

---

[32] Id.

[33] Id.

[34] 18 U.S. § 2511(1) (2012). (This part of ECPA was originally enacted as Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. 2510-2520 (1964 ed,)(Supp. IV)).

[35] 18 U.S.C. 2510(6).

[36] 18 U.S.C. 2510(2). See also US v. Larios, 593 F.3d 82, 92 (1st Cir. 2010).

11

furnished or operated by any person engaged in providing or operating such facilities for the transmission of interstate or foreign communications or communications affecting interstate or foreign commerce." [37]

53.    Under a few narrow exemptions, ECPA permits the interception of "oral communications" and "wire communications."[38]

54.    No exception permits a company to surreptitiously record private communications in the home.

55.    By intercepting and recording private communications in the home, Samsung is violating ECPA.[39]

## G.    Samsung's Business Practices Violate Children's Online Privacy Protection Act

56.    Samsung concedes that it markets its SmartTVs to children under the age of 13.[40]

57.    As described above, Samsung routinely records conversation in the home, including children's voices, and transmits these conversations to a third party.

58.    By failing to ask parents' permission to record, store, and transmit children's voices to a third party, Samsung fails to "[p]rovide a reasonable means for a parent to review the personal information collected from a child and to refuse to permit its further use or maintenance."[41]

---

[37] 18 U.S.C. 2510(1).

[38] 18 U.S.C. 2511(1).

[39] In re: Samsung Electronics Co., Ltd. 20 Federal Trade Commission, February 24, 2015 at 14 (the "FTC Samsung Brief") (attached hereto as Exhibit 1).

[40] Samsung specifically targets some features of the SmartTV to young children. The Hopster Smart TV App "brings preschoolers an extensive catalogue of hundreds of episodes of award-winning TV shows." Samsung, Samsung Partners with Hopster to Bring TV and Learning Platform for Children to Smart TV (Dec. 10, 2014), http://www.samsung.com/uk/news/local/samsung-partners-with-hopster-to-bring-tv-andlearning-platform-for-children-to-smart-tv. Id. ("The addition of Hopster to the Samsung Smart Hub means that families can now enjoy even more great content together at home").

[41] FTC Samsung Brief at 19.

59.     Parents cannot reasonably review the personal information that Samsung collects from children in the course of recording users' private conversations in the home.[42]

60.     Therefore, Samsung's failure to obtain parental consent for the collection and transmission of children's voices constitutes a violation of Children's Online Privacy Protection Act, 16 C.F.R. § 312.3 (2013).

H.     Consumers Do Not Believe That Samsung's Voice
       Recognition Involves Voice Recording or Transmission

61.     The Electronic Privacy Information Center ("EPIC"), a public interest research center cited regularly by the FTC[43], has compiled many statements from consumers regarding the fact that they never knew (or could possibly imagine) that Samsung's voice recognition system in Smart TVs could intercept and record private communications in the home, or that Defendants would transmit those private recordings to outside parties.

62.     For example, a Smart TV user Dane Jensen commented:

This is an outrageous invasion of privacy and should be illegal. Actually it is illegal but not being enforced. You are not allowed to spy or record someone without consent. I just bought a Samsung TV and never saw or signed any consent form to be recorded. I never saw anything.[44]

63.     User Stephen commented:

This should have to be relayed to the customer prior

---

[42] Id.

[43] See In re: Samsung Electronics Co., Ltd. 20 Federal Trade Commission, February 24, 2015 (the "FTC Samsung Brief") (attached hereto as Exhibit 1).

[44] Id. at 7.

> to purchasing. Shame on Samsung for giving into the
> governments constant strive to monitor the entire
> population[45]

64.     User potrzebie commented, "I own two Samsung TVs and a Samsung tablet. If they don't stop this right now, I will never buy another Samsung product, ever. Vote with your wallets people.[46]

65.     Twitter user @Jason_Garber commented, "From now on wherever I have business meetings and there is a #Samsung #SmartTV present I will ask for its removal."[47]

66.     Twitter user @CSElder commented, "@Samsungtweets i will NEVER buy another Samsung tv thanks to your recording feature. You overstep your bounds. #SamsungFail"[48]

67.     User beverly commented, "why is this info sent to third party at all it should just stop at the smart tv processor" [49]

68.     User cft6vgy7 commented,

> This is why devices like cameras and microphones
> should always be sold separately from computers, TVs,
> and other electronics. It may not be as "convenient" for
> the less tech-savvy, but it will be more secure for
> every single consumer. Allow consumers to "opt-in" if
> they don't mind the security risk; don't force users to have
> to "opt-out" if they want to preserve their own privacy. [50]

69.     User John Manso wrote,

> I'm glad this is getting national attention. When I first
> saw the smart TV's come out, very few were concerned.
> A device in your living room with a camera, a
> microphone, and 24 hour access to the internet. What

---

[45] Id.
[46] Id.
[47] Id.
[48] Id.
[49] Id.
[50] Id. at 7-8.

could go wrong here? Uh, everything. Who knows who
can hack into all of these with a simple piece of software.
Everything can be "hacked". No we don't cook up
national threats in our living room but privacy is
expected and deserved in one's living room wouldn't you
say?[51]

70.   User Craig Cheatham commented:

There are a couple problems evident here beside the
obvious one of spying on our conversations. All of these
User Agreements convey all sorts of rights to the
company without articulating them in a clear manner to
the consumer. . . . There is NO way to know what is
"shared" or who has access to it. . . . This trope of Future
Shock is a new societal psychological syndrome, as yet
unnamed. It is not really paranoia, it is a response to the
unwilling sharing of our personal lives that we are
powerless to stop without becoming a tree dwelling
Luddite. It is an intrusion into what had been considered
private personal space.[52]

I.   Experts, Including the FTC, Hold Out That Samsung's
     "Always-On" Voice Recording Practice Is Misleading
     And Deceptive to Consumers

71.   Many experts in law, technology, and government have concluded

that Samsung's decision to intercept and record private communications in the

home is misleading and deceptive to consumers.

72.   The FTC has already deemed Defendants conduct alleged herein to be

misleading and deceptive,[53] and has argued that "**Samsung users could not**

**reasonably have anticipated that by using a voice-controlled SmartTV, their**

---

[51] Id. at 8.
[52] Id.
[53] In re: Samsung Electronics Co., Ltd. 20 Federal Trade Commission, February 24, 2015 (attached hereto).

15

**private conversations would be transmitted, sometimes unencrypted, to a**

**third party company."**[54]

73.   Technology journalist Natasha Lomas commented:

The creepy wording of Samsung's SmartTV privacy policy
only serves to pass the buck on risks — and fails to
educate the user on how exactly the technology they have
paid for works, opting to make them feel uneasy/urge them
to self-censor instead. If this privacy policy pleases
anyone, it's only going to put smiles on the face of
Samsung's legal department. So while the content of the
policy comes off as Orwellian, the processes here are more
impenetrably Kafka-esque, with unseen layers and players
(in the case of the VR in this TV the third party processor
is apparently Nuance — which has its own privacy policy
that TV users suddenly become subject to if they utilize
the on-board voice recognition feature) involved in the
processing of the user's data, leaving the person who has
actually paid for the device in the dark about what exactly
is going on. As more consumer electronics devices are
networked and augmented with cloud-services, far greater
levels of transparency about data processing will be
required from device makers — along with clearly
signposted opt-outs and user-controls for cloud-processing
— to avoid the people who actually pay for this stuff to
end up viewing 'smart' as 'suspicious'.[55]

74.   Emma Carr, director of privacy campaign group Big Brother Watch,

commented:

Samsung needs to understand that not everyone wants to be
spied on by their TV. It is outrageous that the company has
even stated in its own privacy policy that if the TV's owner

---

[54] Id. at 19 (emphasis added).
[55] See Natasha Lomas, *Toad in Creepy Privacy Policies, Samsung's Easedropping TV*, Techcrunch (Feb. 8, 2015),
http://techcrunch.com/2015/02/08/telescreen/.

does decide not to share their private information, then the company may still take the information anyway. This leaves users with no knowledge or control over where your information goes or who has access to it and that is simply unacceptable. Few people would expect a TV to intrude on our privacy, yet this is increasingly becoming the case. As this sort of technology is being made to gather increasing amounts of data about us, it is vitally important that people should have to choose to make use of these additional services.[56]

75.    Paul Levy, a senior researcher at the University of Brighton, commented:

Did you recently buy a Samsung smart TV? If you are worried about privacy, you may be wondering how smart that decision was following the manufacturer's warnings that its voice-activated televisions may record personal information – that is, your conversations – and transmit them to a third party. The voice-activated television monitors spoken conversations to listen for commands and transmits them to another firm which performs the voice analysis. Samsung stated that the televisions may even do so when the voice-activation feature is turned off. … But it's endlessly apparent how firms that are evangelical about the need for user data to be accessible to them are nevertheless vague about how they then use it. Terms and conditions are long and bamboozling.[57]

76.    Ann Cavoukian, the former Ontario privacy commissioner and current

executive director of the Privacy and Big Data Institute at Ryerson University,

commented,

---

[56] Alex Hern, *The Guardian Samsung Rejects Concern Over Orwellian Privacy Policy*, The Guardian (Feb. 9, 2015), http://www.theguardian.com/technology/2015/feb/09/samsung-rejects-concern-over-orwellianprivacy-policy (quoting the remarks of Emma Carr).

[57] Paul Levy, *Privacy is fast becoming the real disruptive force in digital technology*, The Conversation (Feb. 11, 2015) http://theconversation.com/privacy-is-fast-becoming-the-real-disruptive-force-in-digitaltechnology-37244.

*"With Samsung, it's like all of sudden you have to monitor what you should say in your home — the last bastion of privacy, a place that's supposed to be sacrosanct. Are you kidding me?"[58]*

## CLASS ACTION ALLEGATIONS

77.    Plaintiff brings this action as a class action on behalf of himself and the Class consisting of:

> ***All persons and entities in the United States who, from January 9, 2012 through the present, purchased or leased any Samsung Smart TV products ("the "Class").***

78.    The Class satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Federal Rule of Civil Procedure 23(a).

79.    Plaintiff reserves the right to amend or modify the Class definitions with greater specificity or further division into subclasses or limitation to particular issues after discovery.

80.    The members of the Class are so numerous that joinder of all members is impracticable.  Although the precise number of Class members is unknown to Plaintiff at this time and can be determined only by appropriate discovery, it is reasonably estimated that the Class consists of at least tens of thousands, or hundreds of thousands, or millions of members who are geographically dispersed throughout the country.

81.    Because Plaintiff is a purchaser of Samsung products and has been subject to Defendants' systematic, deceptive and misleading course of conduct, policies, and advertising intended to trick, mislead and significantly confuse consumers, Plaintiff is a member of the Class and his claims typical of the claims

---

[58] Matt Kwong, *Samsung SmartTV an 'absurd' privacy intruder, Ann Cavoukian says, CBC News* (Feb. 10, 2015) http://www.cbc.ca/news/technology/samsung-smarttv-an-absurd-privacy-intruder-ann-cavoukiansays-1.2950982 (emphasis added)..

of the members of the Class. The harm suffered by Plaintiff and all other Class members was and is caused by the same misconduct by Defendants.

82. Plaintiff will fairly and adequately represent and protect the interests of the Class, in that Plaintiff has no interests antagonistic to, nor in conflict with, the Class. Plaintiff has retained competent counsel, experienced in consumer and commercial class action litigation, to further ensure such protection and who intend to prosecute this action vigorously.

83. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Because the monetary damages suffered by individual Class members are relatively small, the expense and burden of individual litigation make it impossible for individual Class members to seek redress for the wrongful conduct asserted herein. If Class treatment of these claims was not available, Defendants would likely continue their wrongful conduct, would unfairly retain many hundreds of thousands or millions of dollars in improperly obtained revenues, or would otherwise escape liability for their wrongdoing as asserted herein.

84. Common questions of law and fact exist as to all members of the Class which predominate over any questions that may affect individual Class members. Among the questions of law and fact common to the Class include the following:

> a. whether Defendants' deceptive advertising and marketing campaign, and misleading statements and omissions, caused consumers to purchase Samsung products;
>
> b. whether Defendants violated the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1 et seq.;
>
> c. whether Defendants acted negligently and/or recklessly in protecting consumer recordings and information;

d.  whether Defendants breached the implied duty of good faith and fair dealing; and

e.  the appropriate measure of damages, restitution, pre- and post-judgment interest, and/or other relief to which Plaintiff and the Class members are entitled.

85.  Common questions of law and fact exist as to all members of the Class. The Class is readily definable, and prosecution of this action as a Class Action will reduce the possibility of repetitious litigation. Information concerning Samsung products sold by Defendants is available from Defendants' books and records. Plaintiff knows of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a Class Action.

86.  The prosecution of separate actions by individual members of the Class would run the risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for the Defendant in this action. Prosecution as a class action will eliminate the possibility of repetitious litigation.

87.  The Class is readily definable. Information concerning the Samsung products sold by Defendants is available from many sources, including Defendants' books and records.

88.  Defendants have acted and/or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

## FIRST CAUSE OF ACTION

## (Defendants' Unlawful Interception, Recording, and Transmission to Third Parties of Private Conversations: Violations of the CFA)

89.  Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth at length herein.

90.     Plaintiff brings this cause of action on behalf of himself and on behalf of all other members of the Class.

91.     The CFA, N.J. Stat. Ann. § 56:8-2, prohibits:
> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise . . . .

92.     The CFA defines "merchandise" as "any objects, wares, goods commodities, services or anything offered, directly or indirectly to the public for sale." N.J. Stat. Ann. § 56:8-1(c).

93.     At all relevant times, Defendants have engaged in the advertisement, offering for sale and sale of merchandise within the meaning of N.J. Stat. Ann. § 56:8-1(c), specifically Samsung Smart TVs.

94.     Upon information and belief, beginning in 2012, Defendants began using Smart TV technology to record the private conversations of unsuspecting consumers on a second-by-second basis. Defendants provided this recording data to third parties which, upon information and belief, used it to track and target individual consumers across devices and/or for other commercial purposes. Defendants engaged in these practices through a medium that consumers would not expect to be used for the recording of consumers' private conversations -- through consumers' own Smart TVs in their homes, even when the devices are turned off - without consumers' consent.

95.     As described above, Samsung in fact transmitted to third parties the voice recordings of its customers – unencrypted -- in plaintext.

96.     Defendants' unfair and deceptive acts occurred repeatedly and were capable of deceiving a substantial portion of the purchasing public.

97.   Defendants' deceptive business practices and misrepresentations and omissions described herein are likely to mislead a reasonable consumer.

98.   Plaintiff and the Class members relied on Defendants' deceptive business practices and misrepresentations and omissions.

99.   As a direct and proximate result of Defendants' unfair or deceptive acts or practices, Plaintiff and members of the Class have suffered and will continue to suffer actual damages, in an amount to be determined at trial.

100.   Defendants' practice of intercepting and recording private communications in the home is unlawful, deceptive and misleading, and violates the Subscriber Privacy Provision in the Cable Communications Policy Act, the Electronic Communications Privacy Act, and the Children's Online Privacy Protection Act.

101.   Defendants' practice of intercepting and recording private communications in the home and then transmitting that information to third parties is also unlawful, deceptive and misleading and violates the Subscriber Privacy Provision in the Cable Communications Policy Act, the Electronic Communications Privacy Act, and the Children's Online Privacy Protection Act.

102.   Defendants' practice of intercepting and recording private communications in the home and then transmitting those recordings and information to third parties, and other misconduct by Defendants (described herein), also constitute unconscionable commercial practices in violation of the CFA.   Each separate instance of Defendants' intercepting, recording, and/or transmitting private communications in the home constitutes a separate violation under the CFA, N.J. Stat. Ann. § 56:8-2.

## SECOND CAUSE OF ACTION

**(Defendants' Inadequate Disclosures: Violations of the CFA)**

103.   Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth at length herein.

104.   Plaintiff brings this cause of action on behalf of himself and on behalf of all other members of the Class.

105.   As described in detail herein, users believe that it is illegal for Samsung to record and transmit over the internet their private conversations.

106.   However, Defendants failed to adequately disclose that Samsung SmartTVs would record and transmit over the internet their private conversations and data.

107.   Samsung's privacy policy did not reveal to consumers the name of the third-party company performing the voice-to-text service.

108.   Further, as described above, Samsung proceeded to mislead consumers about their use of encryption to transmit recorded conversations.

109.   By failing to adequately protect the privacy and safety of users' recorded conversations, Samsung "unreasonably creates or takes advantage of an obstacle to the free exercise of consumer decisionmaking."[59]

110.   Specifically, Samsung users could not reasonably have anticipated that by using a voice-controlled SmartTV, their private conversations would be transmitted, sometimes unencrypted, to a third party company.

111.   The facts not disclosed by Defendants to Plaintiff and the Class are material in that a reasonable consumer would have considered them important in deciding whether or not to purchase Samsung Smart TV products, to purchase fewer products or to pay less for them.  Had Plaintiff and members of the Class known that Defendants were secretly recording their private conversations at home and transmitting them to outside parties, they would not have purchased Samsung

---

[59] FTC Samsung Brief at 19, supra.

Smart TV products, purchased fewer products or paid less for the products they did purchase.

112.   Samsung' inadequate disclosures constitute deceptive acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. § 45(a).[60]

113.   Samsung' inadequate disclosures to Plaintiff and the Class members are also deceptive, misleading, and unconscionable commercial practices and/or omissions of material fact in violation of the CFA.

## THIRD CAUSE OF ACTION

### (Negligence)

114.   Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth at length herein.

115.   Plaintiff brings this cause of action on behalf of himself and on behalf of all other members of the Class.

116.   Defendant Samsung was under a duty to Plaintiff and all members of the Class use reasonable care and protect the private recordings and information of Samsung customers, including a duty to use reasonable care and proper encryption methods so that third parties would not have access to private recordings and information of its customers.

117.   Defendant Samsung breached that duty owed to Plaintiff and the Class, by negligently and/or recklessly:

> a. Making wholly inadequate disclosures to Plaintiff and the Class members concerning Samsung's use of their customers'' private recordings at home;

---

[60] An act or practice is deceptive if it involves a representation, omission, or practice that is likely to mislead the consumer acting reasonably under the circumstances, to the consumer's detriment." Fed. Trade Comm'n, FTC Policy Statement on Deception, available at http://www.ftc.gov/bcp/policystmt/ad-decept.htm [hereinafter FTC Deception Policy]. FTC Deception Policy supra.  Defendants' recording of its consumers conversations, and collection and sharing of sensitive data without consumers' consent, has caused or is likely to cause substantial injury to consumers that is not outweighed by countervailing benefits to consumers or competition and is not reasonably avoidable by consumers themselves. See  FTC Samsung Brief (attached hereto as Exhibit A).  This is an unfair act or practice, in violation of Section 5(a) of the FTC Act, 15.U.S.C. § 45(a), Id., and a violation of the CFA.

b. Failing to use reasonable care and protect the private recordings and information of Samsung customers;

c. Manufacturing Smart TVs in a way that make it possible for third parties to obtain Samsung customers' private recordings and data at home, even when those devices are turned off;

d. Failing to provide reasonable and adequate warnings to Samsung customers that Smart TVs could and would record their private conversations and data – even when those units were supposedly turned off; and

e. Using voice-controlled SmartTVs to record the private conversations of customers and then transmitting unencrypted (and/or not properly encrypted) conversations and data of customers to third parties.

118. Plaintiff and the Class members were foreseeable users and consumers, and were damaged by Defendants' negligence and/or recklessness in an amount to be proven at trial.

119. The negligence and/or recklessness by Defendants described above directly and proximately caused (and continues to cause) injuries to Plaintiff and the other Class members.

## **FOURTH CAUSE OF ACTION**

### **(Common Law Fraud)**

120. Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth at length herein.

121. Plaintiff brings this cause of action on behalf of himself and on behalf of all other members of the Class.

122. Defendants made material misstatements and omissions concerning the Smart TVs that they sold.

123. As a result, Plaintiff and Class members were fraudulently induced to purchase Smart TVs.

124. These misstatements and omissions were made by Defendants with knowledge of their falsity, and with the intent that Plaintiff and Class members rely upon them.

125. Plaintiff and Class members reasonably relied on these misstatements and omissions, and suffered damages as a result.

## FIFTH CAUSE OF ACTION

### (Breach of Express Warranty)

126. Plaintiff incorporates by reference and reasserts all previous paragraphs.

127. Plaintiff brings this cause of action on behalf of himself and on behalf of all other members of the Class.

128. Defendants expressly warranted, among other things, that they would protect properly and adequately customers' private data and personal conversations.

129. Defendants' warranties constitute an affirmation of fact that became part of the basis of the bargain and created an express warranty that Samsung Smart TV would and could conform to the stated promises.

130. All conditions precedent to Defendants' liability under this contract have been performed by Plaintiff and the Class.

131. Defendants' breached the terms of this contract, including the express warranties, with Plaintiff and the Class, by not providing a product that conformed or could possibly conform to Defendants' stated promises of adequately protecting consumer conversations and data, as advertised by Defendants.

132.   As a result of Defendants' breach of its contract, Plaintiff and the Class have been damaged in the amount of the price of the Product they purchased.

## SIXTH CAUSE OF ACTION

### (Breach of the Duty of Good Faith and Fair Dealing)

133.   Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth at length herein.

134.   Plaintiff brings this cause of action on behalf of himself and on behalf of all other members of the Class.

135.   Every contract in New Jersey contains an implied covenant of good faith and fair dealing.

136.   Defendants breached the covenant of good faith and fair dealing by Recording consumers' private conversations and transmitting that data to third parties.

137.   Defendants acted in bad faith and/or with a malicious motive to record Samsung customers without their knowledge, thereby causing them injuries in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, prays for relief as follows:

A.    For an order that this action may be maintained as a Class Action under Rule 23 of the Federal Rules of Civil Procedure, that Plaintiff be appointed Class representatives for the Class, and that Plaintiff's counsel be appointed as counsel for the Class;

B.    For a permanent injunction against Defendants, and each of them, restraining, preventing and enjoining Defendants from engaging in the illegal practices alleged;

C.    For an order requiring Defendants to halt their interception, recording and/or transmission of private communications in the home;

D.    For an order requiring Defendants to halt Samsung's practice of transmitting recorded communications to a third-party;

E.    For an order requiring Defendants, and each of them, to disgorge the profits they wrongfully obtained through the use of their illegal practices;

F.    For an order requiring Defendants, and each of them, to pay restitution to Plaintiff and all members of the Class.

G.    Actual damages;

H.    Punitive damages;

I.    For an award of attorneys' fees;

J.    For an award of the costs of suit incurred herein, including expert witness fees;

K.    For an award of interest, including prejudgment interest, at the legal rate, and;

L.    For such other and further relief as the Court deems necessary and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury of all claims so triable.

DATED: March 10, 2017          Respectfully submitted,

By: _____

Michael E. Berman
BERMAN CLASS LAW
270 Shore Road, Suite 14
Long Beach, NY 11561
Tel: (516) 320-9076
michael@meberman.com